Bron Rammell (ISB No.: 4389)
Brayden K. Cochran (ISB No.: 12178)
MAY, RAMMELL & WELLS, CHTD
216 W. Whitman / P.O. Box 370
Pocatello, Idaho  83204-0370
Telephone:  (208) 233-0132
Facsimile:  (208) 234-2961
bron@mrwlaw.net
brayden@mrwlaw.net

*Attorneys for Plaintiff.*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JONATHAN SCHENK<br>                    Plaintiff.<br><br>vs.<br><br>CITY OF POCATELLO; CITY OF TREMONTON; CITY OF GARLAND; CHIEF ROGER SCHEI; OFFICER SCOTT CARD; OFFICER KENNETH MCCLURE; OFFICER DEMETRIUS AMOS; LT. JOSH HANCOCK; DETECTIVE SHANE JONES; DETECTIVE ERIC BILLS; CHIEF DUSTIN CORDOVA; OFFICER JON HANSEN; OFFICER ALEXANDRIA BOURNE; PPD OFFICERS JOHN AND JANE DOES I-XX; TGPD OFFICERS JOHN AND JANE DOES I-XX;<br><br>                    Defendants. | CASE NO.: 4:26-cv-00344<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

This lawsuit seeks compensation, primarily through 42 U.S.C. §§ 1983 and 1988  for the illegal and unconstitutional seizure, arrest, extradition and literal kidnapping of the Plaintiff by specifically identified defendants, as alleged below.  Additional *Monell* claims relating to the policies, practices and training of the City and County are alleged as well:

## JURISDICTION AND THE PARTIES

1. This Court has jurisdiction over this action under the laws of the State of Idaho and the United States, including 42 U.S.C. §§ 1983, 1988.

2. At all times relevant, Plaintiff Jonathan Schenk was a resident of the State of Utah.

3. At all times relevant, Plaintiff was in Bannock County, State of Idaho and Box Elder County, State of Utah.

4. City of Pocatello is a political subdivision of the State of Idaho ("Pocatello" and/or "PPD").

5. City of Tremonton is a political subdivision of the State of Utah ("Tremonton" and/or "TGPD").

6. City of Garland is a political subdivision of the State of Utah ("Garland" and/or "TGPD").

7. Upon information and belief, at all times relevant, Chief Roger Schei ("Chief Schei" or "Supervisor Defendant(s)") was a resident of Bannock County, State of Idaho.

8. At all times relevant, Chief Schei was employed by the City of Pocatello and the Pocatello Police Department ("PPD").

9. Chief Schei is sued in his individual and official capacities as chief of the Pocatello Police Department.

10. Upon information and belief, at all times relevant, Officer Scott Card ("Officer Card") was a resident of Bannock County, State of Idaho.

11. At all times relevant, Officer Card was employed by the City of Pocatello and the PPD.

12. Officer Card is sued in his individual and official capacities.

13. Upon information and belief, at all times relevant, Lieutenant Josh Hancock ("Lt. Hancock" or "Pocatello Supervisor") was a resident of Bannock County, State of Idaho.

14. At all times relevant, Lt. Hancock was employed by the City of Pocatello and the PPD.

15. Lt. Hancock is sued in his individual and official capacities.

16. Upon information and belief, at all times relevant, Detective Eric Bills ("Detective Bills") was a resident of Bannock County, State of Idaho.

17. At all times relevant, Detective Bills was employed by the City of Pocatello and the PPD.

18. Detective Bills is sued in his individual and official capacities.

19. Upon information and belief, at all times relevant, Officer Kenneth McClure ("Officer McClure") was a resident of Bannock County, State of Idaho.

20. At all times relevant, Officer McClure was employed by the City of Pocatello and the PPD.

21. Officer McClure is sued in his individual and official capacities.

22. Upon information and belief, at all times relevant, Officer Demetrius Amos ("Officer Amos") was a resident of Bannock County, State of Idaho.

23. At all times relevant, Officer Amos was employed by the City of Pocatello and the PPD.

24. Officer Amos is sued in his individual and official capacities.

25. Upon information and belief, at all times relevant, Detective Shane Jones ("Detective Jones") was a resident of Bannock County, State of Idaho.

26. At all times relevant, Detective Jones was employed by the City of Pocatello and the PPD.

27. Detective Jones is sued in his individual and official capacities.

28. Upon information and belief, at all times relevant, Chief Dustin Cordova ("Chief Cordova," or "Supervisor Defendant(s)") was a resident of Box Elder County, State of Utah.

29. At all times relevant, Chief Cordova was employed by the City of Tremonton, City of Garland, and the Tremonton-Garland Police Department ("TGPD")

30. Upon information and belief, the Cities of Tremonton and Garland jointly operate and share a single law enforcement agency known as the Tremonton-Garland Police Department. Officers of the Tremonton-Garland Police Department perform law enforcement functions on behalf of both the City of Tremonton and the City of Garland, and are employees, agents, and/or policymakers for one or both municipalities when acting within the course and scope of their duties

31. Chief Cordova is sued in his individual and official capacities as chief of the TGPD

32. Upon information and belief, at all times relevant, Officer Jon Hansen ("Officer Hansen") was a resident of Box Elder County, State of Utah.

33. At all times relevant, Officer Hansen was employed by Tremonton, Garland, and TGPD.

34. Officer Hansen is sued in his individual and official capacities.

35. Upon information and belief, at all times relevant, Officer Alexandria Bourne ("Officer Bourne") was a resident of Box Elder County, State of Utah.

36. At all times relevant, Officer Bourne was employed by Tremonton, Garland, and TGPD.

37. Officer Bourne is sued in her individual and official capacities.

38. Defendants John and Jane Doe I-XX are other law enforcement officers or employees of Pocatello, Tremonton, Garland, PPD, and/or TGPD who subjected Plaintiff to tortious and/or unconstitutional treatment as alleged herein.

39. Pocatello is a political subdivision of the state of Idaho and its respective employees are sued in their individual and official capacities; all Defendants are a "person" as the term is used in 42 U.S.C. § 1983.

40. Tremonton and Garland are political subdivisions of the state of Utah and their respective employees are sued in their individual and official capacities; all Defendants are a "person" as the term is used in 42 U.S.C. § 1983.

41. This action is brought pursuant to 42 U.S.C. § 1983.

42. Plaintiff is entitled to attorneys fees and costs pursuant to 42 U.S.C. § 1988 for maintenance of this action.

43. Jurisdiction is proper pursuant to 28 U.S.C. § 1343.

44. Jurisdiction is appropriate as Defendants availed themselves to the privileges of conducting activities in the State of Idaho and such activities in the State of Idaho are substantially related to Plaintiff's claims.

45. Venue is proper pursuant to 28 U.S.C. § 1391 in the United States District Court for the District of Idaho as the acts and omissions giving rise to the complaint in this case substantially occurred in the State of Idaho.

46. Venue is appropriate in the United States District Court for the District of Idaho as Defendants availed themselves to the State of Idaho.

47. All Defendants are jointly and severally liable for their below stated conduct and for the damages suffered by Mr. Schenk which he seeks to recover as alleged herein.

## **FACTS**

48. The preceding paragraphs are fully incorporated herein by reference.

49. On Thursday June 6, 2024 at approximately 9:00 p.m., Mr. Schenk was driving in Pocatello, Idaho when he was stopped by PPD Officer Card for an alleged license plate obstruction or failure to properly display a license plate.

50. In Idaho, an obstructed license plate is an infraction pursuant to Idaho Code § 49-428.

51. Pursuant to Idaho Infraction Rule 7(d), infractions are **non-arrestable civil offenses**.

52. As described below, Officer Card's true motive for stopping Mr. Schenk was not due to an alleged license plate obstruction.

53. Mr. Schenk was instead stopped illegally because his vehicle purportedly matched the description of an "Attempt-to-Locate" issued by TGPD Officer Hansen out of Tremonton, Utah.

54. That "Attempt-to-Locate" was posted by Officer Hansen, claiming that Mr. Schenk was wanted for multiple misdemeanor and felony arrest warrants out of Utah ("Utah Warrants").

55. To any extent there were actual or valid warrants in Utah, the Utah Warrants **did not** authorize an out-of-state arrest.

56. Officer Card knew at the time that the Utah Warrants did not permit an out-of-state arrest.

57. Upon stopping Mr. Schenk, Officer Card immediately arrested Mr. Schenk.

58. Officer Card commanded Mr. Schenk via his vehicle's public address system to switch off the engine and position his hands outside the vehicle.

59. PPD Officers Amos, McClure, and Detective Bills arrived at the scene around this same time.

60. Officer Card drew his gun and approached Mr. Schenk, while ordering him out of his vehicle.

61. Officer Card tried to open Mr. Schenk's drivers' side door to forcibly remove him but the door was locked.

62. Mr. Schenk fully complied with Officer Card's orders, including opening the door and getting out of his truck.

63. When questioned, Mr. Schenk said he had a firearm in his waistband.

64. Mr. Schenk was entitled to have the firearm in his waistband pursuant to Idaho law, including Idaho Code § 18-3302.

65. Mr. Schenk was then promptly handcuffed by Officer Card.

66. Officer Card handcuffed Mr. Schenk illegally.

67. The handcuffing was the result of unconstitutional practices, policies, customs and/or training by the PPD.

68. Officers Amos, McClure, and Detective Bills, who were present at the time of the illegal arrest and handcuffing did not intervene, despite their obligation to do so, violating the 4th and/or 14th Amendments.

69. Mr. Schenk was handcuffed and arrested without proper legal authority to arrest him.

70. The Utah Warrants did not give Officer Card and the PPD or its employees the legal authority to arrest Mr. Schenk.

71. The alleged licence plate obstruction, even if it was obstructed, did not give Card or PPD legal authority to arrest Mr. Schenk.

72. Mr. Schenk was unlawfully seized by Officer Card and the PPD and its employees in order to detain him.

73. The illegal purpose of the detention was to extend the stop and seizure until the Utah Warrants became extraditable and authorized out-of-state arrests.

74. In this sense, the Defendants involved in this stop, detention and arrest conspired to violate Mr. Schenk's civil rights in violation of the Fourth and Fourteenth Amendments as well as Article IV, Section 2, Cl. 2 of the United States Constitution.

75. Officer Card admitted to Mr. Schenk that he was seized pending the confirmation of the Utah Warrants.

76. Officer Card then took Mr. Schenk to a nearby police car.

77. Officer McClure approached Mr. Schenk and removed the firearm from his waistband.

78. At the police car, Officer Card removed a knife from Mr. Schenk's pocket.

79. Officer Card then admitted to Mr. Schenk that he had detained and/or seized Mr. Schenk due to the Utah Warrants.

80. Officer Card then called PPD dispatch to inquire with the TGPD about whether the alleged Utah warrants authorized extradition.

81. Officer Card also told PPD dispatch to tell the TGPD that they had Mr. Schenk in custody.

82. Officer Card then admitted (to Mr. Schenk) that he really didn't stop Mr. Schenk for an obstructed license plate.

83. At that time, Officer Card and the other officers at the scene knew they could not arrest Mr. Schenk.

84. He and the other officers knew that they had no right to do a search of Mr. Schenk, beyond a safety search.

85. They knew that the U.S. Constitution prohibited them from holding Mr. Schenk beyond the limited time necessary to complete the legal purpose of the stop.

86. The alleged reason for the stop was an obstructed license plate.

87. While at the police car, Officer Card told Officers Amos, McClure and Detective Bills that he did not search Mr. Schenk all of the way and that he only searched for weapons.

88. Officers Amos, McClure and Detective Bills then searched Mr. Schenk a second time.

89. The search was illegal.

90. The search was done pursuant to an unlawful arrest.

91. Officers Card, Amos, McClure, and Detective Bills reached into and searched Mr. Schenk's pockets.

92. Their search was not done pursuant to any warrantless search exception.

93. Officers Card, Amos, McClure, and Detective Bill's search exceeded the scope and purpose of Officer Card's pat-down search.

94. Officer Card, Amos, McClure, and Detective Bills searched Mr. Schenk for purposes of prolonging his seizure and/or detention until the Utah Warrants authorized out-of-state arrests.

95. Officers Card, Amos, McClure, and Detective Bills unlawful search and seizure of Mr. Schenk were done pursuant to PPD policies, practices, customs, and training.

96. Such policies, practices, customs, and training failed to protect Mr. Schenk from the unlawful search and seizure.

97. While Mr. Schenk was being searched, Officer Card continued to follow up with PPD dispatch regarding the status of the Utah warrants

98. In performing their search of Mr. Schenk, Officers Card, Amos, McClure, and Detective Bills discovered a "blue tooter" in Plaintiff's front left pocket.

99. Although Mr. Schenk was already under arrest by Officer Card, Mr. Schenk was again "formally" arrested by Officer Card.

100.    The claim for the second arrest was allegedly for possession of drug paraphernalia with intent to use.

101.    After Mr. Schenk's arrest for possession of drug paraphernalia with intent to use, Officer Card was contacted by PPD dispatch who informed Officer Card that Utah was attempting to get the Utah Warrants changed from "in-state" to surrounding states.

102.    Officers Card, Amos, McClure, Detective Bills, and the PPD knew that they could not lawfully seize or arrest Mr. Schenk on the Utah Warrants.

103.    Officer Card then also admitted to Mr. Schenk that PPD could not send Mr. Schenk to Utah, because the Utah warrants were non-extraditable.

104.    After continuing to hold Mr. Schenk at the scene for approximately thirty (30) minutes, Mr Schenk was eventually transported to the Bannock County Jail ("BCJ").

105.    While Mr. Schenk was being booked into the BCJ, Officer Card was contacted by TGPD Officer Hansen.

106.    TGPD Officer Hansen informed him that TGPD had tried to get out-of-state warrants for Mr. Schenk, but was unable to get the judge to sign them.

107.    TGPD Officer Hansen asked Officer Card if, due to it being the weekend and nighttime, he and PPD would transport Mr. Schenk to the Idaho-Utah border so that TGPD could take custody of Mr. Schenk.

108.    This request was in furtherance of a conspiracy to violate Mr. Schenk's civil rights.

109.    Both Hansen and Card knew that transporting Mr. Schenk across the border without a warrant or other clear legal authority was illegal.

110.    Taking Mr. Schenk across the border illegally is criminal kidnapping pursuant to Idaho Code § 18-4501(1), which is a felony.

111. There is no legal exception allowing officers to kidnap Mr. Schenk under these circumstances.

112. Officer Card and TGPD Officer Hansen acted pursuant to the PPD and TGPD's policies, customs, practices, and training.

113. Said policies, customs, practices, and training should have, but failed to protect Mr. Schenk from an unlawful extradition from Idaho to Utah.

114. The PPD did not have adequate policies, training or practices to ensure that these constitutional violations did not occur.

115. On Hansen's request, Officer Card reached out to his supervisor, PPD Lt. Hancock.

116. Lt. Hancock knew that it would be illegal to transport Mr. Schenk to the Idaho-Utah border under the circumstances.

117. Lt. Hancock approved and ratified Officer Card and TGPD Officer Hansen's agreement to transport Mr. Schenk from the BCJ to the Idaho-Utah Border.

118. Lt. Hancock did this knowing that the transportation was illegal.

119. Lt. Hancock and the other officers knew or should have known that to transport Mr. Schenk across the border, under the circumstances, was a criminal act.

120. Lt. Hancock's approval and ratification were pursuant to the PPD's policies, practices, customs, and training.

121. Such policies, practices, customs, and training failed to protect Mr. Schenk from an unlawful extradition from Idaho to Utah.

122. After receiving approval from Lt. Hancock, Officer Card agreed to transport Mr. Schenk to the Idaho-Utah border.

123. The agreement with Hansen was illegal.

124. The agreement was to commit a crime.

125. Officers Hansen, Card, and Lt. Hancock all knew the transport under the circumstances was illegal.

126. They knew the transport violated the United States Constitution.

127. The transport violated Article IV, Section 2, Cl. 2, the Fourth and Fourteenth Amendment of the United States Constitution, and 18 U.S.C. § 3182, I.C. § 19-4510, I.C. § 19-4511 and I.C. §18-4501.

128. Once the determination had been made to transport Mr. Schenk into Utah, Officer Card then ordered Mr. Schenk to dress back into the clothing he had originally worn **before** being booked into the BCJ.

129. He told Mr. Schenk that he had a "surprise" waiting for him.

130. The agreement to remove and subsequent removal were done without affording Mr. Schenk any opportunity to contest the legality of his arrest prior to being extradited.

131. The agreement to remove violated Mr. Schenk's rights to due process under Article IV, Section 2, Cl. 2 and the Fourteenth Amendment of the United States Constitution.

132. The agreement to remove and subsequent removal were without any proper determination that there was sufficient evidence to detain and deliver Mr. Schenk to Utah.

133. Prior to removing Mr. Schenk from the BCJ, Officer Card "voided" the original citation for drug paraphernalia with intent to use and issued a cite-and-release citation for Drug paraphernalia with intent to use.

134. Card did this with the express and tacit approval of his superiors at the PPD.

135. Card's actions were made pursuant to PPD training, practices, customs/and or policies.

136.    Neither Officer Card, or any other defendant had the legal authority to undo or dispose of the initial charge without Due Process, or to "un-book" Mr. Schenk from the BCJ and to take him against his will to the border for delivery to Utah.

137.    The process employed by Officer Card and the other Idaho PPD defendants violated Mr. Schenk's rights to due process under the 4th and 14th Amendments.

138.    Defendants John and/or Jane Does I-XX who were employed with PPD knew Officer Card and themselves had no authority to "un-book" Mr. Schenk.

139.    Defendants John and/or Jane Does I-XX knew or reasonably should have known that Officer Card intended to transport Mr. Schenk to the Idaho-Utah border.

140.    Defendants John and/or Jane Does I-XX permitted Officer Card to undo and dispose of the initial charge and "un-book" Mr. Schenk without Due Process.

141.    Officer Card, Lt. Hancock, and John and/or Jane Does I-XX knew they did not have the authority to remove Mr. Schenk from the BCJ and into the custody of the TGPD.

142.    Defendants John and/or Jane Does I-XX acted pursuant to Pocatello policies, practices, customs, and training.

143.    Said policies, practices, customs, and training failed to protect Mr. Schenk from being unlawfully "un-booked" and extradited from Idaho to Utah.

144.    At no time during Mr. Schenk's incarceration at the BCJ was Mr. Schenk provided an opportunity to post bail or have a hearing on the same.

145.    At no time during Mr. Schenk's incarceration at the BCJ was Mr. Schenk brought before a magistrate.

146.    At no time during Mr. Schenk's incarceration at the BCJ was Mr. Schenk informed by a judge or magistrate of the court of his right to legal counsel.

147. At no time during Mr. Schenk's incarceration at the BCJ was Mr. Schenk informed by a judge or magistrate of the court of his right to contest the legality of his arrest prior to being extradited.

148. Mr. Schenk was never provided any of the protections guaranteed by Idaho Code § 19-4510, also in violation of the 4th and/or 14th Amendments to the U.S. Constitution.

149. Officer Card and Detective Jones of the PPD subsequently transported Mr. Schenk to the Idaho-Utah border sometime during the night of June 6, 2024 where TGPD Officers Hansen, Bourne, and other unidentified TPD Officers John and Jane Doe I-XX waited.

150. Detective Jones knew he had no authority to transport Mr. Schenk to the Idaho-Utah border.

151. Detective Jones knew or reasonably should have known of Officer Card and Officer Hansen's agreement to transport Mr. Schenk to the Idaho-Utah border without legal authority.

152. These actions violated a number of criminal laws in Idaho, including I.C. § 19-4511, 18-4502, and 18-4503.

153. Despite such knowledge, Detective Jones agreed to assist in transporting Mr. Schenk from the BCJ to the Idaho-Utah border.

154. At the Idaho-Utah border, Officer Card and Detective Jones met with TGPD Officers Hansen and Bourne.

155. Officers Hansen and Bourne crossed from the Utah border into Idaho.

156. The Utah Defendants, including Hansen and Bourne then took custody of Mr. Schenk in Idaho.

157. Mr. Schenk was then forced into Utah by the Defendants, including Officer Card, Detective Jones, and TGPD Officers Hansen and Bourne in handcuffs and against his will.

158. Rather than adhere to the federal, state, and constitutional mandates which concern the extradition of individuals to other states, the aforementioned Pocatello and TGPD employees conspired to unlawfully transport Mr. Schenk and compel him into the custody of TGPD.

159. As a result, Mr. Schenk was deprived of any opportunity to challenge his extradition from Idaho into Utah, in violation of his constitutional due process rights under the 14th Amendment and Article IV, Section 2, Cl. 2 to the U.S. Constitution.

160. Officer Card and Detective Jones acted on the direction and pursuant to PPD's policies, practices, customs, and training.

161. Based on knowledge and belief, Officers Hansen, Bourne and the other involved TGPD officers acted on the direction and pursuant to TGPD policies, training, customs and/or practices of that department.

162. Said policies, practices, customs, and training failed to protect Mr. Schenk from unlawful extradition from Idaho to Utah.

163. Mr. Schenk was subsequently purloined to the Box Elder County Correctional Facility late at night on June 6, 2024.

164. A *Warrant for Arrest*, was only issued after the completion of a substantial amount of the illegal activity.

165. The warrant was issued by District Court Judge Brandon Maynard out of Box Elder County, which then included "surrounding states," late that night on June 6, 2024 (at approximately 10:42 p.m).

166. That warrant was several hours after Mr. Schenk had been arrested, booked, unbooked, and charged and arrested again.

167. There is no known record of the conversations between Judge Maynard and the officers seeking the warrant, to know what was said between the judge and officers (their testimony in support of the warrant) in violation of Utah Court Rules of Criminal Procedure 6 and Idaho Criminal Rule 41(c) and actionable under the 4th and 14th Amendment to the U.S. Constitution.

168. It is believed, and therefore alleged, however that substantial and material misrepresentations were made to the judge, which resulted in the post arrest and purloining warrant.

169. Mr. Schenk was never arrested upon that *Warrant for Arrest*.

170. Restricting Mr. Schenk's liberty and prolonging his detention until an out of state warrant became available was illegal under the 4th and 14th Amendments to the U.S. Constitution.

171. Mr. Schenk's transport to the Idaho-Utah border was intended to circumvent federal, state, and constitutional mandates related to extradition.

172. The morning after the kidnapping, at approximately 4:56 a.m. on June 7, 2024, TGPD Officer Bourne submitted an *Affidavit of Probable Cause* for Mr. Schenk's arrest.

173.  TGPD Officer Bourne's *Affidavit of Probable Cause* represented that Mr. Schenk was arrested by the PPD and that Mr. Schenk made an attempt to reach for his handgun before he was seized by the PPD.

174.  This report was false and in violation of Mr. Schenk's due process rights under the 14th Amendment of the United States Constitution.

175.  Officer Bourne made no mention of Mr. Schenk's purloining from Idaho to Utah nor Mr. Schenk's seizure by her and Officer Hansen at the Idaho-Utah border.

176.  At approximately 7:39 a.m. on June 7, 2024, Judge Spencer D. Walsh of the Brigham City District Court for Box Elder County entered an *Order to Hold Without Bail,* based on the misleading information.

177.  In the *Order to Withhold Bail*, the Court found probable cause existed for the ***warrantless arrest*** of Mr. Schenk based upon the affirmations of Officer Bourne.

178.  In the *Order to Withhold Bail*, the Court ordered Mr. Schenk to be held without bail based upon the affirmations of Officer Bourne.

179.  Mr. Schenk was denied access to any court until June 10, 2024, when he was finally brought before a court in Box Elder County until his initial appearance on June 10, 2024.

180.  Mr. Schenk was never found guilty of any offense in Idaho.

181.  Mr. Schenk ultimately pleaded guilty to a misdemeanor action in Utah, after and as a result of the above coercive measures and show of unconstitutional authority.

182.  At all times relevant, Pocatello and its respective employees acted pursuant to their official power and authority granted to them under the color of state law.

183.  At all times relevant, Tremonton, Garland, and their respective employees acted pursuant to their official power and authority granted to them under the color of state law.

184. Mr. Schenk is entitled to be made whole again for his damages, including but not limited to all special, general, nominal, exemplary, and any other damages suffered in an amount determined appropriate by a jury.

185. Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988, and the other statutes and laws relevant to specific counts below.

**FIRST CAUSE OF ACTION**
(Violation of Due Process – Extradition Rights – Against Card, Amos, McClure, Bills, Hancock, Jones, Hansen, Bourne, John and/or Jane Does I-XX)

186. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

187. Article IV, Section 2, Cl. 2 of the United States Constitution guarantees Mr. Schenk protection against extradition except in circumstances wherein an executive authority of a state demands that he be delivered and removed to the state having jurisdiction of any alleged crimes.

188. Article I, Section 13 of the Idaho State Constitution guarantees that no person shall be deprived of life, liberty or property without due process of law.

189. Article 1, Section 7 of the Utah State Constitution guarantees that no person shall be deprived of life, liberty or property, without due process of law.

190. The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

191. Mr. Schenk has a protected liberty interest and right to substantive and procedural safeguards pertaining to his arrest and extradition from Idaho to Utah.

192. These procedural and substantive safeguards include, but are not limited to, the following:

a. 18 U.S.C. § 3182 which protected Mr. Schenk against extradition unless reliable evidence is presented that he had been charged with a crime in the state seeking extradition. Such protections include a determination by an officer of the extraditing state having been presented with an indictment or an affidavit certified by the Governor of the demanding state.

b. I.C. § 19-4510 which provides that Mr. Schenk was entitled to a hearing before a judge or magistrate of the court prior to his extradition. This included the judge or magistrate of the court informing Mr. Schenk of his right to legal counsel and the right to contest the legality of his arrest prior to being extradited. Specifically, I.C. § 19-4510 requires an individual arrested on an out-of-state warrant to be first taken to a magistrate court to be informed that he has a right to demand and procure legal counsel, to contest the legality of the arrest, to apply for a writ of habeas corpus, and have a hearing thereon.

c. The deprivation of Mr. Schenk's statutory rights pursuant to I.C. § 19-4510 is a misdemeanor pursuant to I.C. § 19-4511.

d. Article I, section 6 of the Idaho State Constitution and I.C. § 19-2903 guaranteed and entitled Mr. Schenk the right to bail.

e. I.C. § 19-4510 incorporates the protection provided by Article IV, Section 2, Cl. 2 of the United States Constitution and 18 U.S.C. § 3182 by requiring procedural safeguards which ascertain whether the evidence is sufficient to detain and deliver the accused for trial in another state.

193.    These constitutional rights, statutory requirements, and procedural safeguards created substantive and procedural protected interests under the due process clause of the Fourteenth Amendment which Mr. Schenk relied upon.

194.    Mr. Schenk was provided with none of the above-listed protections and procedural safeguards by Defendants, who include Card, Amos, McClure, Bills, Hancock, Jones, Hansen, Bourne, and John and/or Jane Does I-XX.

195.    Mr. Schenk was deprived of his constitutional right to due process under Article IV, Section 2, Cl. 2 of the United States Constitution.

196.    Mr. Schenk was deprived of his constitutional rights under  Article I, Section 13 of the Idaho State Constitution.

197.    Mr. Schenk was deprived of his constitutional rights under Article 1, Section 7 of the Utah State Constitution.

198.    Mr. Schenk was never afforded his statutory rights pursuant to I.C. § 19-4510.

199.    I.C. § 19-4510 incorporates the rights protected under 18 U.S.C. § 3182 and the United States Constitution.

200.    This deprivation included, but is not limited to, the intentional, reckless, deliberately indifferent, and/or negligent conduct of Defendants Officer Card, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Doe I-XX involved therewith.

201.    Defendants' conduct shocks the conscious

202.    Defendants' behavior interfered with Mr. Schenk's aforementioned constitutional rights.

203.  Said conduct included that which is already alleged and specifically includes, but is not limited to, the following:

a.  Defendants Card, Amos, McClure, and Detective Bills unlawfully seized, searched, and prolonged Mr. Schenk's seizure in order to stop Mr. Schenk until the Utah Warrants authorized out-of-state arrests.

b.  Officer Defendants Card, Lt. Hancock, Detective Jones, and other John and/or Jane Does I-XX at the BCJ removing Mr. Schenk from the BCJ without authority to do so.

c.  When Officer Card and Detective Jones transported Mr. Schenk to the Idaho-Utah border where he was taken into the custody of Officers Hansen, Bourne, and other unidentified Jane/John Does I-XX.

d.  In doing so, Mr. Schenk was never afforded the opportunity to post bail.

e.  When Officer Card voided his original citation against Mr. Schenk and re-issued a cite-and-release citation.

f.  Furthermore, Mr. Schenk was also never afforded the aforementioned guarantees of I.C. § 19-4510 and 18 U.S.C. § 3182 before his transport from Idaho to Utah.

g.  These deprivations were a result and consequence of Officer Hansen's proposal to Officer Card to transport Mr. Schenk to the Idaho-Utah Border.

204.  For those reasons, among others, Mr. Schenk was deprived of his Constitutional rights.

205.  Officer Card, Amos, McClure, Detective Bills, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Does I-XX involved in

this matter either knew or should have known of Mr. Schenk's constitutional and statutory rights.

206. Officer Card, Amos, McClure, Detective Bills, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Does I-XX removed and acted to have Mr. Schenk removed from Idaho to Utah in violation of Mr. Schenk's constitutional and statutory rights.

207. The deprivation of Mr. Schenk's constitutional rights were ratified by Lt. Hancock through his approval of Mr. Schenk being transported to the Idaho-Utah border.

208. Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and nominal damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

209. Defendants Card, Hancock, Jones, Hansen, Bourne, and John and/or Jane Does I-XX are jointly and severally liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory, nominal, and punitive damages.

210. Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

211. Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
(Violation of Due Process – Bail – Against Card, Hancock, Jones, Hansen, Bourne, John and/or Jane Does I-XX)

212. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

213. The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

214. Article I, Section 6 of the Idaho State Constitution and I.C. § 19-2903 guaranteed and entitled Mr. Schenk the right to bail.

215. Accordingly, Mr. Schenk has a protected liberty interest and right to substantive and procedural safeguards pertaining to his arrest and extradition from Idaho to Utah.

216. These procedural and substantive safeguards include, but are not limited to, the following:

   a. Article I, section 6 of the Idaho State Constitution and I.C. § 19-2903 guaranteed and entitled Mr. Schenk the right to bail.

   b. Additionally, I.C. § 19-4516 guaranteed Mr. Schenk had an opportunity to bail prior to a formal extradition hearing as required by Idaho Code Title 19 Chapter 45.

217. These Constitutional rights, statutory requirements, and procedural safeguards created substantive and procedural protected liberty interests under the due process clause of the Fourteenth Amendment which Mr. Schenk relied upon.

218. Mr. Schenk was provided with none of the above-listed protections and procedural and substantive safeguards by Defendants, who include Card, Hancock, Jones, Hansen, Bourne, and John and/or Jane Does I-XX.

219. This deprivation included, but is not limited to, occurred as a result of intentional, reckless, deliberately indifferent, and/or negligent aforementioned conduct of Defendants Officer Card, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Doe I-XX involved therewith.

220. Defendants' conduct shocks the conscious

221.    Defendants' behavior interfered with Mr. Schenk's aforementioned constitutional rights.

222.    Officer Card, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Does I-XX involved in this matter either knew or should have known of Mr. Schenk's constitutional, statutory, and procedural rights.

223.    Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and nominal damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

224.    Defendants Card, Hancock, Jones, Hansen, Bourne, and John and/or Jane Does I-XX are jointly and severally liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory, nominal, and punitive damages.

225.    Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

226.    Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION
(Civil Conspiracy Against Card, Amos, McClure, Bills, Jones, Hancock, Hansen, Bourne, and John and/or Jane Does I-XX)

227.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

228.    Officer Card, Officer Amos, Officer McClure, Detective Bills, Detective Jones, Lt. Hancock, Officer Hansen, Officer Bourne, and other unidentified John and Jane Does I-XX, acting in their capacities as law enforcement officers, reached an agreement and acted in concert to unlawfully deliver Mr. Schenk from the State of Idaho to the State of Utah.

229. Such unlawful delivery deprived Mr. Schenk of his aforementioned constitutional right to due process and the procedural safeguards of extradition and bail.

230. This agreement was formed when PPD Officers Card, Amos, McClure, and Detective Bills unlawfully seized Mr. Schenk without lawful authority to do so.

231. This agreement was also formed when Officer Hansen contacted Officer Card and asked him to transport Mr. Schenk to the Idaho-Utah border so that TGPD could take custody of Mr. Schenk.

232. In furtherance of this conspiracy, the above identified Defendants committed several overt acts which included that above alleged conduct and specifically, but is not limited to, the following:

   a. Officers Card, Amos, McClure, and Detective Bills unlawfully seized Mr. Schenk for a traffic infraction without lawful authority to do so.

   b. Officers Card, Amos, McClure, and Detective Bills unlawfully searched Mr. Schenk without lawful authority to do so.

   c. Officers Card, Amos, McClure, and Detective Bills unlawfully arrested Mr. Schenk for alleged possession of drug paraphernalia as the result of an unlawful search.

   d. Officer Card, Amos, McClure, and Detective Bills above-referenced acts served to unnecessarily and unconstitutionally prolong Mr. Schenk's seizure.

   e. Officer Card, Lt. Hancock, and other John and/or Jane Does I-XX involved removed Mr. Schenk from the BCJ for the purpose of transporting Mr. Schenk to the Idaho-Utah border and to prevent Mr. Schenk from posting bail;

f.  Officer Card voided his original citation of Mr. Schenk and re-issued a "cite-and-release" citation.

g.  Officer Card and Detective Jones transported Mr. Schenk to the Idaho-Utah border;

h.  Officer Hansen, Officer Bourne, and other unidentified TGPD officers waited at the Idaho-Utah border to take custody of Mr. Schenk pursuant to his agreement with Officer Card;

i.  Officer Card ordered Mr. Schenk to walk across the state border into the custody of the waiting TGPD Officers.

j.  Officer Hansen, Officer Bourne, and other unidentified TGPD officers John and/or Jane Does I-XX arrested Mr. Schenk immediately upon crossing the border into Utah, thereby completing the objective of the conspiracy.

k.  Once in Utah,  Officer Bourne filed her *Affidavit of Probable Cause*, which made no mention of the aforementioned circumstances in which she and Officer Hansen arrested Mr. Schenk in an effort to conceal his unlawful extradition and arrest.

233.  The objective and result of this conspiracy was to intentionally bypass the requirements of the United States Constitution, Idaho State Constitution, Utah State Constitution, federal law, and state law concerning extradition.

234.  As a result, Mr. Schenk was deprived of his rights which included, among other rights, to a hearing before a magistrate, his right to counsel, to post bail, and his right to contest the legality of his arrest before being removed from Idaho to Utah.

235.  As a direct and proximate result of the above-identified Defendants' actions, Mr. Schenk was deprived of his rights under the Fourth and Fourteenth Amendments to the

United States Constitution and has suffered damages, including general, specific, nominal, the loss of his constitutional rights, mental anguish, and severe emotional distress.

236. The above-identified Defendants are jointly and severally liable to Mr. Schenk for his damages incurred as a result of the conspiracy, including compensatory and punitive damages.

237. Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

238. Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
(Violation of Fourth and Fourteenth Amendment - Unlawful Searches - Against Card, Amos, McClure, Bills, and John and/or Jane Does I-XX)

239. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

240. The Fourth and Fourteenth Amendments of the United States Constitution guarantee the right to be free from unreasonable searches and seizures.

241. On numerous occasions, Mr. Schenk's Fourth and Fourteenth Amendment rights were deprived of him.

242. This deprivation included, but is not limited to, the intentional, reckless, deliberately indifferent, and/or negligent conduct of Defendants Officer Card, Amos, McClure, Detective Bills, and any other unidentified John and Jane Doe I-XX involved therewith

243. Such conduct included that alleged above and specifically includes, but is not limited to, the following:

   a. Officer Card conducted a weapons pat-down search on Mr. Schenk.

b. McClure removed the firearm from his waistband.

c. Officer Card then told Officer McClure, Amos, Detective Bills that he had already checked for weapons.

d. Despite this representation by Officers Card, McClure, Amos and Detective Bills continued to search Mr. Schenk prior to effectuating any lawful arrest and without any warrantless search exception.

e. This search was performed with the ulterior intent to unlawfully delay the initial purpose of Officer Card's stop and to detain Mr. Schenk until the Utah warrants became extraditable.

f. Officers Card, McClure, Amos, and Detective Bills found a "blue tooter" – described to be a melted pen body – on Mr. Schenk's person.

g. This search of Mr. Schenk exceeded the scope and purpose of a weapons pat-down and was unlawful.

h. This search was performed in order to further delay the initial purpose of Officer Card's stop and to seize Mr. Schenk until an out-of-state arrest warrant was issued.

i. As a result of this unlawful search, Mr. Schenk was unlawfully arrested for possession of drug paraphernalia with intent to use.

244. Under these circumstances, Officer Card, Officer Amos, Officer McClure, Detective Bill's, and other unidentified John and/or Jane Does I-XX searched Mr. Schenk was in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

245. Officer Card, Officer Amos, Officer McClure, Detective Bills, and John and/or Jane Does I-XX are jointly and severally liable to Plaintiff for damages arising from their unconstitutional conduct, including both compensatory and punitive.

246. Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

247. Defendants are jointly and severally liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory, nominal, and punitive.

248. Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

249. Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

250. Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION
(Violation of Fourth and Fourteenth Amendment - Unlawful Seizures - Against Card, Amos, McClure, Bills, Hancock, Jones, Hansen, Bourne and John and/or Jane Does I-XX)

251. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

252. The Fourth and Fourteenth Amendments of the United States Constitution guarantee the right to be free from unreasonable searches and seizures.

253. On numerous occasions, Mr. Schenk's Fourth and Fourteenth Amendment rights were deprived of him.

254. This deprivation included, but is not limited to, the intentional, reckless, deliberately indifferent, and/or negligent conduct of Defendants Officer Card, Amos, McClure, Detective Bills, Detective Jones, Hansen, Bourne, and any other unidentified John and Jane Doe I-XX involved therewith

255. Such conduct included that alleged above and included, but is not limited to, the following:

a. On or about June 6, 2024, Mr. Schenk was pulled over by Officer Card for an alleged infraction which is a non-arrestable civil offense.

b. When Officer Card pulled Mr. Schenk over, he ordered Mr. Schenk to switch off the engine to his vehicle and place his hands outside the vehicle.

c. Once Officers Card and Amos approached Mr. Schenk, they immediately ordered him out of the vehicle and placed handcuffs on him, thereby seizing Mr. Schenk

d. These actions were unreasonable as contemplated by the Fourth Amendment and constituted an unlawful seizure.

e. This unlawful seizure was performed with the ulterior intent to unlawfully delay the initial purpose of Officer Card's stop and to detain Mr. Schenk until the Utah warrants became extraditable.

f. As alleged previously, Mr. Schenk was then unlawfully searched by Officers Card, McClure, and Detective Bills.

g. Officer Card, Officer McClure, and Detective Bills found a "blue tooter" – described to be a melted pen body – on Mr. Schenk's person.

h. As a result of this unlawful search, Mr. Schenk was unlawfully arrested for possession of drug paraphernalia with intent to use.

    i. By unlawfully arresting Mr. Schenk for possession of drug paraphernalia with intent to use, Officer Card, Officer Amos, Officer McClure, and Detective Bills unlawfully and unreasonably delayed the initial purpose of Officer Card's stop of Mr. Schenk.

    j. This unlawful arrest was for the ulterior purpose of seizing Mr. Schenk until his Utah warrants became extraditable.

    k. Mr. Schenk was then unlawfully seized by PPD Defendants until he was seized unlawfully by Hansen and Bourne and transported into Utah without legal authority.

256. Under these circumstances, Officer Card, Officer Amos, Officer McClure, Detective Bill's, Detectives Jones, Hansen, Bourne, and other unidentified John and/or Jane Does I-XX seizure, and arrest of Mr. Schenk was in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

257. Officer Card, Officer Amos, Officer McClure, Detective Bill's, Detectives Jones, Hansen, Bourne, and other unidentified John and/or Jane Does I-XX are jointly and severally liable to Plaintiff for damages arising from their unconstitutional conduct, including both compensatory and punitive.

258. Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, nominal, and damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

259. Defendants are jointly and severally liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory, nominal, and punitive.

260.    Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

261.    Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

262.    Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

**SIXTH CAUSE OF ACTION**
(Due Process - Denial of Initial Appearance Without Unnecessary Delay - Against Card, Hancock, Jones, Hansen, Bourne, and John and/or Jane Does I-XX)

263.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

264.    The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

265.    Accordingly, Mr. Schenk had a protected liberty interest in procedural and substantive safeguards pertaining to his arrests and initial appearance before a magistrate.

266.    These procedural safeguards include the following:

a.    Pursuant to Idaho Criminal Rule 5(b), Idaho Code § 19-615, and Idaho Code § 19-515, to appear before a magistrate in the judicial district of the arrest without unnecessary and/or unreasonable delay. In no event may the delay be more than 24 hours following the arrest, excluding Saturdays, Sundays, and holidays.

b.    Pursuant to Utah Rules of Criminal Procedure Rule 9, and Utah Code § 77-7-23, a person arrested and delivered to a correctional facility without a warrant must be presented without unnecessary and/or unreasonable delay before a magistrate for a determination of probable cause and eligibility for pretrial release no longer than

24 hours after the arrest. Under Utah Code § 77-7-23(5), a violation of the statute is a class B misdemeanor.

267. These statutory requirements and procedural and substantive safeguards created protected liberty interests under the due process clause of the Fourteenth Amendment which Mr. Schenk relied upon.

268. While in the custody of the PPD, Mr. Schenk was deprived of his procedural and substantive due process rights under the Fourteenth Amendment.

269. This deprivation included, but is not limited to, the intentional, reckless, deliberately indifferent, and/or negligent conduct of Defendants Officer Card, Lt. Hancock, Detective Jones, Officer Hansen, Officer Bourne, and any other unidentified John and Jane Doe I-XX involved therewith.

270. Defendants' conduct shocks the conscious

271. Defendants' behavior interfered with Mr. Schenk's aforementioned constitutional rights.

272. Said conduct that alleged above and included, but is not limited to, the following:

   a. When Officer Card voided his original citation of Mr. Schenk and re-issued a cite-and-release citation for the unlawful purpose of transporting Mr. Schenk to the Idaho-Utah border.

   b. When Officer Defendants removed Mr. Schenk from the BCJ and transported Mr. Schenk to the Idaho-Utah border where he was taken into the custody of Officers Hansen, Bourne, and Jane/John Does I-XX.

   c. As a result, Mr. Schenk was never presented to a magistrate as required by Idaho Criminal Rule 5(b), Idaho Code § 19-615, and Idaho Code § 19-515.

d. After Mr. Schenk was seized by TGPD Officers Bourne and Hansen, Officer Bourne filed an *Affidavit of Probable Cause* which was false and deceptive as it alleged that Mr. Schenk made an attempt to reach for his handgun before he was seized by the PPD.

e. None of this was reported by PPD and was untrue.

f. TGPD Officer Bourne omitted any information pertaining to Mr. Schenk's transport from Idaho to Utah and her and TGPD Officer Hansen's seizure of Mr. Schenk at the Idaho-Utah border.

g. Officer Bourne omitted this information to conceal Mr. Schenk's unlawful transport from Idaho to Utah.

h. Based on the false and/or misleading affirmations made by TGPD Officer Bourne, Judge Spencer D. Walsh of the Brigham City District Court found probable cause for the warrantless arrest of Mr. Schenk.

i. Based on the false and/or misleading affirmations made by TGPD Officer Bourne, Judge Spencer D. Walsh of the Brigham City District Court ordered that Mr. Schenk be held without bail.

j. Once Mr. Schenk was placed at the Box Elder Correctional Facility; he was not presented to a magistrate until approximately four (4) days after his arrest by Officers Hansen, Bourne, and Jane/John Does I-XX.

k. Consequently, Mr. Schenk was not presented to a magistrate without unnecessary and/or unreasonable delay.

273. Mr. Schenk was deprived of his due process right to appear before a magistrate in Idaho and/or Utah without unnecessary and/or unreasonable delay.

274. Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

275. Defendants are liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory and punitive.

276. Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

277. Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

## SEVENTH CAUSE OF ACTION
(Due Process - False/Misleading Affidavit Against Bourne, Hansen and John and/or Jane Does I-XX)

278. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

279. The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

280. The Fourth Amendment guarantees Mr. Schenk to be free from unreasonable searches and seizures.

281. Mr. Schenk had a protected liberty interest in procedural and substantive safeguards pertaining to his arrests and initial appearance before a magistrate.

282. These procedural safeguards include the following:

   a. Pursuant to Utah Rules of Criminal Procedure Rule 9, and Utah Code § 77-7-23, a person arrested and delivered to a correctional facility without a warrant must be presented without unnecessary and/or unreasonable delay before a magistrate for a determination of probable cause and eligibility for pretrial release no longer than

24 hours after the arrest. Under Utah Code § 77-7-23(5), a violation of the statute is a class B misdemeanor.

283.   These Constitutional rights, statutory requirements, procedural, and substantive safeguards created protected liberty interests under the due process clause of the Fourteenth Amendment which Mr. Schenk relied upon.

284.   Mr. Schenk's constitutional rights were deprived of him and this deprivation included, but is not limited to, the dishonest, intentional, reckless, deliberately indifferent, and/or negligent conduct of Officer Bourne, and any other unidentified John and Jane Does I-XX involved therewith.

285.   Defendant' conduct shocks the conscious.

286.   Defendants' behavior interfered with Mr. Schenk's aforementioned constitutional rights.

287.   Said conduct included that alleged previously and specifically includes, but is not limited to, the following:

   a.   TGPD Officers Bourne and/or Hansen made substantial and material misrepresentations and/or omissions to Judge Brandon Maynard in order to receive a warrant which included "surrounding states."

   b.   At approximately 4:56 a.m., TGPD Officer Bourne submitted an *Affidavit of Probable Cause*.

   c.   TGPD Officer Bourne's *Affidavit of Probable Cause* was false and deceptive as it alleged that Mr. Schenk made an attempt to reach for his handgun before he was seized by the PPD.

   d.   None of this was reported by PPD.

e. TGPD Officer Bourne omitted any information pertaining to Mr. Schenk's transport from Idaho to Utah and her and TGPD Officer Hansen's seizure of Mr. Schenk at the Idaho-Utah border.

f. Officer Bourne omitted this information to conceal Mr. Schenk's unlawful transport from Idaho to Utah.

g. Based on the false and/or misleading affirmations made by TGPD Officer Bourne and Hansen, Judge Spencer D. Walsh of the Brigham City District Court found probable cause for the warrantless arrest of Mr. Schenk.

h. Based on the false and/or misleading affirmations made by TGPD Officer Bourne, Judge Spencer D. Walsh of the Brigham City District Court ordered that Mr. Schenk be held without bail.

i. Once Mr. Schenk was placed at the Box Elder Correctional Facility; he was not presented to a magistrate until approximately four (4) days after his arrest by Officers Hansen, Bourne, and Jane/John Does I-XX.

j. Consequently, Mr. Schenk was not presented to a magistrate without unnecessary and/or unreasonable delay.

288. Mr. Schenk was deprived of his due process right to appear before a magistrate in Utah without unnecessary and/or unreasonable delay based upon Officer Bourne's false and/or misleading *Affidavit of Probable Cause*.

289. Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

290.  Defendants are jointly and severally liable to Mr. Schenk for his damages incurred in the deprivation of his constitutional rights including compensatory and punitive.

291.  Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

292.  Plaintiff is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

## EIGHTH CAUSE OF ACTION
(Failure to Train and Supervise Against Pocatello, Tremonton, Garland, and Supervisor Defendants Chief Schei and Chief Cordova)

293.  The preceding paragraphs are re-alleged and fully incorporated herein by reference.

294.  Pocatello is a political subdivision of the state of Idaho and its respective employees are sued in their individual and official capacities; all Defendants are a "person" as the term is used in 42 U.S.C. § 1983.

295.  At all times relevant, Pocatello and its respective employees acted pursuant to their official power and authority granted to them under the color of state law.

296.  Tremonton and Garland are political subdivisions of the state of Utah and their respective employees are sued in their individual and official capacities; all Defendants are a "person" as the term is used in 42 U.S.C. § 1983.

297.  At all times relevant, Tremonton, Garland and their respective employees acted pursuant to their official power and authority granted to them under the color of state law.

298.  Pocatello, Tremonton, Garland, and their Supervisor Defendants failed to provide their officers with adequate training regarding, but not limited to: searches, seizures, due process, and extradition as alleged above and incorporated herein.

299.    The violation of Mr. Schenk's constitutional rights are attributable to the training, policies, practices, and/or decisions of Pocatello, Tremonton, and Garland.

300.    Said training, policies, practices, and/or decisions include, but are not limited to a failure to train Officer Defendants to abstain from depriving individuals their rights to due process and extradition proceedings, and a deliberately indifferent failure to implement policies which protects Mr. Schenk's constitutional rights to due process, from unlawful searches, from unlawful seizures, to be brought before a magistrate without unnecessary and/or unreasonable delay, and extradition proceedings.

301.    The Pocatello, Tremonton, Garland, and its Supervisor Defendants failed to properly train and/or supervise their respective employee Defendants so as to prevent them from having violated Mr. Schenk's constitutional rights.

302.    The Pocatello, Tremonton, Garland, and their Supervisor Defendants failed to protect Mr. Schenk from their respective employee Defendants' aforementioned unconstitutional conduct.

303.    It was reasonably foreseeable that the Pocatello, Tremonton, Garland, and their Supervisor Defendants' failure to properly train and supervise their respective Defendant employees would result in harm including – but not limited to – the deprivation of Mr. Schenk's constitutional rights as alleged above.

304.    The need for additional and/or sufficient training regarding unreasonable searches and seizures is so obvious that the failure to do so constitutes deliberate indifference to Mr. Schenk's constitutional rights.

305. The Pocatello, Tremonton, Garland, and their Supervisor Defendants' deliberately indifferent training and/or supervision were the moving force, and direct cause, of the violation of Mr. Schenk's constitutional rights.

306. Accordingly, the Pocatello, Tremonton, Garland, and their Supervisor Defendants' actions were also in violation of the United States Constitution including, but not limited to, the Fourth and Fourteenth Amendments and Article IV, Section 2, Clause 2 to the United States Constitution and caused the deprivation of Mr. Schenk's constitutional rights as alleged above.

307. Pocatello, Tremonton, Garland, and their Supervisor Defendants are liable to Mr. Schenk for damages arising from their respective Defendant employee's unconstitutional conduct which is attributable to policies, practices, and/or decisions of Supervisor Defendants or a failure to adopt policies necessary to prevent its employees from engaging in unconstitutional conduct.

308. Supervisor Defendants and Pocatello, Tremonton, and Garland are liable for Plaintiff's damages arising from their unconstitutional conduct which led to the deprivation of Plaintiff's constitutional rights, including both compensatory, nominal, and punitive damages.

309. Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

### **NINTH CAUSE OF ACTION**
(Lack of Policy or Unconstitutional Policy and Practice Against Pocatello, Tremonton, Garland, Supervisor Defendants Chief Schei and Chief Cordova)

310. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

311. The violation of Mr. Schenk's constitutional rights are attributable to the policies, practices, and/or decisions of Pocatello, Tremonton, and Garland.

312. Pocatello, Tremonton, Garland, and their Supervisor Defendants employed their respective employee Defendants at all times relevant.

313. The Pocatello, Tremonton, Garland, and their Supervisor Defendants are responsible for the training, supervision, and formulation of policies or practices related to the conduct of the Pocatello, Tremonton, Garland, and their Supervisor Defendants.

314. Pocatello, Tremonton, Garland, and their Supervisor Defendants were in a position to set the policy, custom, or practice, and are liable directly for the consequences of any unconstitutional acts by their employees.

315. Pocatello, Tremonton, Garland, and their Supervisor Defendants were deliberately indifferent in their failure to implement or change policies, practices, and/or decisions including which protects Mr. Schenk's constitutional rights which include – but are not limited to – due process, from unlawful searches, from unlawful seizures, to be brought before a magistrate without unnecessary and/or unreasonable delay, and extradition proceedings.

316. Pocatello, Tremonton, Garland, and their Supervisor Defendants failed to implement or change policies or customs so as to prevent their respective employees from violating Mr. Schenk's constitutional rights as alleged herein.

317. Pocatello, Tremonton, Garland, and their Supervisor Defendants had a policy, custom, or practice that tolerates the commission of unconstitutional acts by its officers and/or employees.

318. Pocatello, Tremonton, Garland, and their Supervisor Defendants failed to protect Mr. Schenk from their respective employees' unconstitutional conduct as previously alleged.

319. It was reasonably foreseeable that the Pocatello, Tremonton, Garland, and their Supervisor Defendants' failure to properly implement or change policies or customs sufficient to protect people's constitutional rights would result in harm including – but not limited to – the deprivation of Mr. Schenk's constitutional rights as alleged above.

320. Pocatello, Tremonton, Garland, and their Supervisor Defendants' failure to implement or change policies or customs were the moving force, and direct cause, of the deprivation of Mr. Schenk's constitutional rights as previously alleged.

321. The deprivation of Mr. Schenk's constitutional rights and the need for more or different training, policies, customs, and/or practices was so obvious that the failure to do so demonstrates deliberate indifference.

322. The Defendant's conduct, through those officers and employees, constituted and/or evidenced a custom of laxity and disregard regarding Mr. Schenk's constitutional rights as alleged herein.

323. Such custom was or became a de facto official policy

324. Accordingly, the Supervisor Defendants' actions were also in violation of the United States Constitution including, but not limited to, the Fourth and Fourth & Fourteenth Amendments and Article IV, Section 2, Clause 2 to the United States Constitution. Supervisor Defendants therefore caused the deprivation of Mr. Schenk's constitutional rights as previously alleged.

325. Supervisor Defendants and Pocatello, Tremonton, and Garland are liable for Mr. Schenk's damages arising from their unconstitutional conduct which led to the

deprivation of his constitutional rights, including both compensatory, nominal, and punitive damages.

326. Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

### TENTH CAUSE OF ACTION
(Failure to Intervene Against Card, Amos, McClure, Bills, and John and/or Jane Does I-XX)

327. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

328. Article IV, Section 2, Cl. 2 of the United States Constitution guarantees Mr. Schenk protection against extradition except in circumstances wherein an executive authority of a state demands that he be delivered and removed to the state having jurisdiction of any alleged crimes.

329. The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

330. The United States Constitution guarantees the right to be free from unreasonable searches and seizures.

331. The Fourth and Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right to be free from deprivation of his life, liberty, or property without due process of law.

332. Officers Card, Amos, Mclure, Detective Bills, and PPD Officers John and/or Jane Does I-XX had an obligation to prevent Officer Card and/or other PPD officers/employees from infringing upon the constitutional rights of Mr. Schenk, when they had reason to know said violations have occurred, or said violations were done in their presence.

333. Officer Card and/or other PPD Defendants unlawfully arrested and searched Mr. Schenk in the presence of Officers Amos, McClure, Detective Bills, and PPD Officers John and/or Jane Does I-XX.

334. Officers Amos, McClure, Detective Bills, and PPD Officers John and/or Jane Does I-XX witnessed Officer Card's and/or other PPD Defendants conduct when he unlawfully arrested and searched Mr. Schenk.

335. Officers Amos, Mclure, Detective Bills, and Officers John and/or Jane Does I-XX could have intervened to stop Officer Card and/or other PPD Defendants from violating Mr. Schenk's constitutional rights but failed to do so.

336. Officer Card witnessed Officers Amos, Mclure, Detective Bills, and Officers John and/or Jane Does I-XX unlawfully search Mr. Schenk.

337. Officer Card could have intervened to stop Officers Amos, McClure, Detective Bills, and PPD Officers John and/or Jane Does I-XX from violating Mr. Schenk's constitutional rights but failed to do so.

338. Officers Card, Amos, McClure, Detective Bills, and PPD Officers John and/or Jane Does I-XX are liable to Mr. Schenk for damages arising from their failure to intervene, including both compensatory and punitive damages.

339. The violation of Mr. Schenk's constitutional rights are attributable to the policies, practices, and/or decisions of Pocatello Supervisor Defendants.

340. Said policies, practices, and/or decisions include, but are not limited to, a deliberate indifference or failure to train their employees to abstain from unreasonable searches and seizures under the Fourth and Fourteenth Amendments.

341.    Supervisor Defendant Chief Schei and Pocatello are liable to Mr. Schenk for damages arising from their employees' unconstitutional conduct and failure to intervene which are attributable to their policies, practices, and/or decisions of Chief Schei or a failure to adopt policies necessary to prevent their employees from engaging in the aforementioned unconstitutional conduct.

342.    Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and nominal damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

343.    Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

344.    Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

### ELEVENTH CAUSE OF ACTION
(Failure to Intervene Against Hancock, Jones, Bourne, and John and/or Jane Does I-XX)

345.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

346.    Article IV, Section 2, Cl. 2 of the United States Constitution guarantees Mr. Schenk protection against extradition except in circumstances wherein an executive authority of a state demands that he be delivered and removed to the state having jurisdiction of any alleged crimes.

347.    The Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right from being deprived of life, liberty, or property without due process of law.

348.    The United States Constitution guarantees the right to be free from unreasonable searches and seizures.

349. The Fourth and Fourteenth Amendment of the United States Constitution guarantees Mr. Schenk the right to be free from deprivation of his life, liberty, or property without due process of law.

350. Lt. Hancock, Detective Jones, PPD Officers John and/or Jane Does I-XX, Officer Bourne and TGPD Officers John and/or Jane Does I-XX had an obligation to prevent Officer Card and Officer Hansen from infringing upon the constitutional rights of Mr. Schenk, when they had reason to know said violations have occurred, or said violations were done in their presence.

351. Officer Card unlawfully transported Mr. Schenk to the Idaho-Utah border in violation of his aforementioned due process extradition rights.

352. Officer Hansen conspired with Officer Card to transport Mr. Schenk to the Idaho-Utah border in violation of his aforementioned due process extradition rights.

353. Lt. Hancock, Detective Jones, PPD Officers John and/or Jane Does I-XX, Officer Bourne, and TGPD Officers John and/or Jane Does I-XX witnessed Officer Card and Officer Hansen's conduct when they unlawfully transported Mr. Schenk to and from the Idaho-Utah border and conspired to deprive Mr. Schenk of his due process extradition rights.

354. Lt. Hancock, Detective Jones, PPD Officers John and/or Jane Does I-XX, TPD Officer Bourne, and TGPD Officers John and/or Jane Does I-XX could have intervened to stop Officer Card and Officer Hansen from violating Mr. Schenk's constitutional rights but failed to do so.

355. Lt. Hancock, Detective Jones, PPD Officers John and/or Jane Does I-XX, Officer Bourne, and TGPD Officers John and/or Jane Does I-XX could have intervened to stop

Officer Card and Officer Hansen from violating Mr. Schenk's constitutional rights, but failed to do so.

356.    Lt. Hancock, Detective Jones, PPD Officers John and/or Jane Does I-XX, Officer Bourne, and TGPD Officers John and/or Jane Does I-XX are liable to Mr. Schenk for damages arising from their failure to intervene, including both compensatory and punitive damages.

357.    The violation of Mr. Schenk's constitutional rights are attributable to the policies, practices, and/or decisions of Pocatello, Tremonton, Garland, and Supervisor Defendants.

358.    Said policies, practices, and/or decisions include, but are not limited to, a deliberate indifference or failure to train their employees to abstain from unreasonable searches and seizures under the Fourth and Fourteenth Amendments and violating Mr. Schenk's due process extradition rights under Article IV, Section 2, Clause 2 to the United States Constitution.

359.    Supervisor Defendants and Pocatello, Tremonton, and Garland are liable to Mr. Schenk for damages arising from their employees' unconstitutional conduct and failure to intervene which are attributable to their policies, practices, and/or decisions of Supervisor Defendants or a failure to adopt policies necessary to prevent their employees from engaging in the aforementioned unconstitutional conduct.

360.    Mr. Schenk has suffered damages due to the deprivation of his constitutional rights, including general, specific, and nominal damages for the taking of his constitutional rights in and of itself, mental anguish, and emotional distress.

361.    Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

362.    Mr. Schenk is entitled to attorney's fees and costs for the maintenance of this action pursuant to 42 U.S.C. § 1988.

## TWELFTH CAUSE OF ACTION
(False Imprisonment)

363.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

364.    At all times relevant, Defendants and other unidentified John and Jane Does I-XX were acting within the course and scope of their employment.

365.    Defendants and other unidentified John and Jane Does I-XX intentionally restrained and/or confined Mr. Schenk against his will when he was handcuffed, arrested, transported to the Jail, and transported from the Jail to the Idaho-Utah border and into Utah.

366.    Defendants did so without legal authority to do so.

367.    Defendants and other unidentified John and Jane Does I-XX intentionally restrained and/or confined Mr. Schenk against his will when he was arrested and transported to the Idaho-Utah border and into Utah.

368.    At all times, Mr. Schenk was aware of his restraint.

369.    Mr. Schenk has suffered damages as a result of Defendants and other unidentified John and Jane Does I-XX's false imprisonment of him.

370.    Mr. Schenk's damages include – but are not limited to – mental and emotional injuries sustained.

371.    As supervisors, Pocatello, Tremonton, and Garland are vicariously liable for the actions of their employees acting within the course and scope of their employment.

372.    As such, Pocatello, Tremonton, and Garland are liable for Mr. Schenk's damages suffered herein.

373. Mr. Schenk is entitled to be made whole again for the damages he has sustained.

374. Mr. Schenk is entitled to recovery of reasonable costs and attorney's fees pursuant to Idaho law including I.C. § 6-918A; 12-120; 12-121; and 12-123;

## THIRTEENTH CAUSE OF ACTION
(Negligence/Negligence Per Se)

375. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

376. At all times relevant Defendants owed Mr. Schenk a general duty of care to prevent foreseeable injuries.

377. Defendants also owed Mr. Schenk a duty of care which included preventing foreseeable injuries by abiding to the law.

378. This included a duty under I.C. § 19-4501 *et seq.* which requires that an individual arrested on an out-of-state warrant to be first taken to a magistrate court to be informed that he has a right to demand and procure legal counsel, to contest the legality of the arrest, to apply for a writ of habeas corpus, and have a hearing thereon.

379. The deprivation of these rights is a misdemeanor pursuant to I.C. § 19-4511.

380. Pocatello, Chief Schei, and Lt. Hancock owed Mr. Schenk a duty to prevent foreseeable harm from the conduct of its employees, supervisors, and supervisors.

381. At all times relevant, Defendants were acting within the course and scope of their employment.

382. While acting within the course of scope of their employment, Defendants failed to exercise ordinary care while Mr. Schenk was in the custody of Pocatello through their negligent and/or negligent per se conduct.

383. Defendants breached their general duties to prevent foreseeable harm through a number of acts which included those alleged above and include, but are not limited to,

when Defendants deprived Mr. Schenk of his rights protected under I.C. § 19-4501 *et seq.*, Idaho Code § 19-615, and Idaho Code § 19-515, and as previously alleged.

384.    Defendants also breached their duties of care by unlawfully searching, seizing, and transporting Mr. Schenk to the Idaho-Utah Border without lawful authority to do so.

385.    Pocatello, Chief Schei, and Lt. Hancock breached their duty of care as they were made aware of, or reasonably should have known, of their employees and/or supervisees negligent conduct and failed to take any meaningful steps to prevent further negligent conduct.

386.    As a direct and proximate result of this breach, Mr. Schenk has suffered damages which included – but are not limited to – mental and emotional damages caused from Defendants breach of the aforementioned duty.

387.    Defendants are jointly and severally liable for all of Mr. Schenk's damages which resulted from their negligent and/or negligent per se conduct.

388.    Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

389.    Mr. Schenk is entitled to recovery of reasonable costs and attorney's fees pursuant to Idaho law including I.C. § 6-918A; 12-120; 12-121; and 12-123;

### FOURTEENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

390.    The preceding paragraphs are re-alleged and fully incorporated herein by reference.

391.    Officers Card, Amos, McClure, Detective Jones, and Detective Bills intentionally and/or recklessly acted against Mr. Schenk in a manner which caused him severe emotional distress.

392. These actions included those alleged herein and specifically include, but are not limited to, unlawfully seizing and searching Mr. Schenk, transporting Mr. Schenk to the Idaho-Utah border without legal authority to do so, and subsequently forcing him to walk across the border and into the custody of Officer Hansen, Officer Bourne, and other TGPD Officers John and/or Jane Does I-XX.

393. This conduct was extreme and outrageous as officers and detectives are ordinarily expected to obey the law and not violate individuals constitutional rights.

394. As previously alleged, Officer Card and Detective Bills acted outside the scope of the law and Mr. Schenk's constitutional rights

395. As a result of this conduct, Mr. Schenk has suffered severe emotional distress.

396. Officers Card, Amos, McClure, Detective Jones, and Detective Bills are jointly and severally liable for all of Mr. Schenk's damages which resulted from their conduct against Mr. Schenk which caused him severe emotional distress.

397. Mr. Schenk is entitled to be made whole again for his damages suffered in an amount determined appropriate by a jury.

398. Mr. Schenk is entitled to recovery of reasonable costs and attorney's fees pursuant to Idaho law including I.C. § 6-918A; 12-120; 12-121; and 12-123;

### FIFTEENTH CAUSE OF ACTION
(Civil RICO - Violation of Idaho Code 18-7801)

399. The preceding paragraphs are re-alleged and fully incorporated herein by reference.

400. Defendants Pocatello and its employees, and its employees, Tremonton and its employees, Garland and its employees, are either individuals or entities capable of holding a legal or beneficial interest in property and therefore constitute "persons" within the meaning of Idaho Code § 18-7803(b).

401. As detailed in the preceding paragraphs, Defendants and their employees meet the definition of an "enterprise" within the meaning of Idaho Code § 18-7803(c).

402. Defendants and their employees conspired together to unlawfully seize Mr. Schenk until the Utah Warrants allowed out of state arrests.

403. Defendants and their employees conspired together to unlawfully seize Mr. Schenk until the Utah Warrants authorized extradition.

404. Said unlawful seizures were committed by Defendants and their employees with the intent to cause Mr. Schenk – without authority of law – to secretly confine and/or imprison Mr. Schenk within Idaho against his will.

405. Said unlawful seizures committed by Defendants and their employees constituted kidnapping as defined by Idaho Code § 18-4501(1).

406. Defendants and their employees conspired together to unlawfully seize and transport Mr. Schenk across the Idaho-Utah border and into the custody of the TGPD.

407. Said unlawful seizure and transportation was committed by Defendants and their employees with the intent to cause Mr. Schenk – without lawful authority – to be sent out of Idaho and into Utah against his will.

408. Said unlawful seizure and transportation by Defendants and their employees constituted a second and separate act of kidnapping as defined by Idaho Code § 18-4501(1).

409. All of the foregoing acts of misconduct constitute "racketeering" as the term as defined under Idaho Code § 18-7803(a)(3).

410. These acts, both collectively and individually, were performed: (i) with the same or similar intent to unlawfully detain Mr. Schenk and unlawfully transport Mr. Schenk to the

Idaho-Utah border and into the custody of the TGPD due to the actions of Pocatello and its employees.

411.   Mr. Schenk is entitled to be made whole again for the damages he has sustained.

412.   Mr. Schenk is entitled to three (3) times the actual damages proved at trial, as well as the costs of filing and prosecuting this suit, including reasonable attorney's fees, pursuant to this statute including I.C. § 18-7805(a).

**WHEREFORE**, Mr. Schenk respectfully pray for judgment against Defendants as follows:

1. For recovery of all damages necessary to make the Plaintiff "whole", including special, general, nominal, punitive damages, and any and all other damages caused by one or more of the Defendants as jointly and severally liable;

2. For the recovery of all reasonable costs and attorney's fees pursuant to Federal law, including but not limited to, 42 U.S.C.§ 1988 and 15 U.S.C. § 1681 *et seq.*;

3. For the recovery of all reasonable costs and attorney's fees pursuant to Idaho law, including but not limited to I.C. §§ 6-918A; 18-7805(a); 12-120; 12-121; and 12-123;

4. For three times (3) times the actual damages proved as trial, as well as the costs of filing and prosecuting this suit, including reasonable attorney's fees, pursuant to I.C. § 18-7805(a);

5. For any and all further just and equitable relief;

6. Plaintiffs request a trial by jury in this matter.

DATED this 4th day of June, 2026.

                              MAY, RAMMELL & WELLS, CHTD.
                              *Attorneys for Plaintiff*

                              */s/ Bron Rammell*
                              BRON RAMMELL

                              */s/ Brayden K. Cochran*
                              BRAYDEN K. COCHRAN